IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| Kenneth Sweeting, ) | CASE NO. 7:14CV00187 |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ) | |
| Dr. Daniel Miller, *et al.*, ) | By: Norman K. Moon |
| ) | United States District Judge |
| **Defendants.** ) | |

Plaintiff Kenneth Sweeting, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983, claiming Defendant Dr. Daniel Miller ignored his food allergies in violation of the Eighth Amendment to the United States Constitution. This matter is before me upon the parties' cross-motions for summary judgment. For the reasons set forth below, Defendant Dr. Daniel Miller's motion for summary judgment will be granted.

## I. FACTUAL BACKGROUND

Sweeting's factual allegations are fully set forth in this Court's August 6, 2015, Memorandum Opinion (docket no. 89). In short, Sweeting claims he received a radioallergosorbent test ("RAST") at Sussex I State Prison ("Sussex") in October 2011, which indicated he was allergic to milk products, beef, wheat, peanuts, fish, shellfish, and beans. Because of his test results, the head doctor at Sussex, Dr. Ulep, placed Sweeting on a "permanent" therapeutic diet order for the Sussex facility. The order noted that Sweeting should not be served foods containing milk products, beef, wheat, peanuts, fish, shellfish, or beans.

Sweeting was then transferred to Wallens Ridge State Prison ("WRSP") in September 2012. At WRSP, he requested a similar therapeutic diet order; however, the head doctor at WRSP, Dr. Daniel Miller, refused his request. Instead, Dr. Miller chastised Sweeting, accusing

1

him of lying to Sussex officials in order to obtain a "special" diet order. He then told Sweeting that he would only place him on a "no fish allergy diet." Pl.'s Mem. in Supp. of Summ. J. ("Pl.'s Mem."), Sweeting Aff. ¶ 12. As a result of the inadequacy of the WRSP diet order, Sweeting alleges that he experienced significant weight loss, consumed foods to which he was allergic in order to avoid starvation, and suffered numerous allergic reactions. *Id.* ¶¶ 13, 17, 22, 24.

Dr. Miller presents a different story regarding Sweeting's treatment. On September 19, 2012, Dr. Miller performed Sweeting's initial physical examination at WRSP, where he reviewed Sweeting's medical history in evaluating the severity of his claimed food allergies. Dr. Miller reviewed the results of the RAST, which indicated that Sweeting was "minimally [positive] for [food] allergies." Def.'s Mem. in Supp. of Summ. J. ("Def.'s Mem."), Ex. A, at 6. He also noted that, according to Sweeting's medical record, no medical official had ever observed Sweeting experience an allergic reaction as a result of his claimed food allergies. He therefore wrote Sweeting a therapeutic diet order which noted allergies to fish and shellfish only.

Sweeting then filed several more complaints and grievances regarding the perceived inadequacy of his diet order, and on November 2, 2012, Dr. Miller performed a follow-up appointment with Sweeting. Again, he reviewed his medical chart, allergy test results, and recent commissary purchases. Notably, recent commissary purchase records showed that Sweeting had ordered foods containing wheat and beef during the same time he claimed allergies to these same foods. Dr. Miller therefore concluded that Sweeting had medically significant allergies to fish and shellfish only and refused to make any adjustments to his diet order. Dr. Miller also "informed [Sweeting] of the availability of sick call and emergency grievance procedures in the event he experienced any type of allergic reaction and/or developed any new allergies." Def.'s Mem., Dr. Miller Aff. ¶ 8.

2

In February 2013, Sweeting was transferred back to Sussex, where he was again placed on a diet order that noted allergies to fish and shellfish only. Sweeting claims he was placed on this regimen because the head doctor at Sussex "could only go off the diet order that was fraudulently changed by Defendant Dr. Miller at [WRSP.]" Pl.'s Compl. ¶ 21. Accordingly, Sweeting continued to eat allegedly "hazardous" foods while housed at Sussex. For example, on March 29, 2013, Sweeting claims he ate brown beans and experienced an allergic reaction. Sweeting's evidence of this alleged allergic reaction consists of a Sussex "offender request form," in which Sweeting asked a Sussex nurse to "[d]escribe the allergic reactions you witnessed me endure after I was fed lunch and foods I was allergic to . . . ." Pl.'s Mem., Ex. 12. In her response, dated May 24, 2013, the Sussex nurse wrote "[p]atients tongue began to swell and he began to complain of his throat feeling as if it were tighting [sic]." *Id.*

## II. LEGAL STANDARD

The court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If

3

the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

When faced with cross-motions for summary judgment, a court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied. However, "if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." *Trigo v. Travelers Commercial Ins. Co.*, 755 F. Supp. 2d 749, 752 (W.D. Va. 2010). The district court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24)).

### III. DISCUSSION

Sweeting claims that Dr. Miller's actions in responding to his special dietary needs constitute deliberate indifference to a serious medical need in violation of the Eighth Amendment. "Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure that the needed care was available." *Wallace v. Corizon Med. Services*, No. RDB-12-3717, 2013 WL 6815671, at *6 (D. Md. Dec. 18, 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 937 (1994)).

4

The United States Court of Appeals for the Fourth Circuit has held that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.' " *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert denied*, 450 U.S. 1041 (1981)). Food allergies may, therefore, give rise to a serious medical need, at least where those allergies prevent the inmate from receiving a safe or nutritionally adequate diet. *Escalante v. Huffman*, No. 7:10-cv-00211, 2011 WL 3107751, at *9 (W.D. Va. July 26, 2011) (recognizing that, for food allergies to give rise to a "serious" medical need, the plaintiff would have to show that he did not receive safe or adequate nourishment).

Accordingly, to survive summary judgment on the objective component of his claim, Sweeting must show that his food allergies prevented him from receiving safe or adequate nourishment. To show inadequate nourishment, courts typically require evidence of a connection between their challenged diet regimen and substantial weight loss. *Kemp v. Drago*, No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *9 (D.S.C. Sept. 11, 2013) (holding that "Plaintiff's allegation of a seventeen-pound weight loss does not state a cognizable claim" of inadequate nourishment); *Escalante*, 2011 WL 3107751, at *9 (allowing inmate to proceed to trial on his food allergy claim where the record showed he had lost over 34 pounds as a result of his challenged diet order). Here, though Sweeting claims he experienced weight loss as a result of Dr. Miller's diet order, Sweeting has provided no evidence of the severity of his weight loss. Moreover, Sweeting concedes that he was able to consume much of the food provided to him at WRSP, and that he was able to supplement his diet by purchasing "non-hazardous" foods from the WRSP commissary. Pl.'s Compl. ¶ 16. In light of the foregoing, Sweeting's evidence is insufficient to show that his allergies prevented him from receiving adequate nourishment.

5

Sweeting has also failed to show that his allergies posed an immediate threat to his health. Sweeting does not identify any instance when he suffered an allergic reaction of medical significance at WRSP. After he left the care of Dr. Miller and was transferred back to Sussex in February 2013, a nurse observed swelling in Sweeting's tongue after eating beans. However, even assuming Sweeting experienced such a reaction following Dr. Miller's treatment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to carry Sweeting's burden in opposing summary judgment. *Anderson*, 477 U.S. at 252.

In light of the foregoing, no reasonable fact-finder could conclude that Sweeting's food allergies prevented him from receiving safe or adequate nourishment, thereby qualifying as an objectively serious medical need while he was housed at WRSP. *See, e.g., Jackson v. Gordon*, No. 3:03-cv-1725, 2014 WL 690643, at *11 (M.D. Pa. Feb. 24, 2014) ("Although [plaintiff] alleged in his complaint that his diet was causing damage to his health, he has failed to come forward with evidence to support such allegations and . . . Therefore, defendants . . . are entitled to an entry of summary judgment."); *Kemp v. Drago*, No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *9 (D.S.C. Sept. 11, 2013) (finding that an inmate alleging deliberate indifference to food allergies "provide[d] insufficient facts to demonstrate that the meals provided were . . . a danger to him," despite his numerous complaints of experiencing anaphylaxis).

Moreover, even if Sweeting could satisfy the objective component of his deliberate indifference claim, there is no evidence that Dr. Miller acted with subjective indifference to his serious medical needs. Upon his arrival at WRSP in September 2012, Dr. Miller performed a physical examination of Sweeting. During the assessment, he reviewed the results of Sweeting's second RAST, which indicated he was "minimally [positive] for allergies." Def.'s Mem., Ex. A, at 6. Dr. Miller also noted, however, that there was "no evidence of anaphylactic [reaction] due

to food allergies in [Sweeting's] medical chart . . . [despite] long stay[s] at multiple VADOC facilities." *Id.* Based on his evaluation, Dr. Miller recommended a therapeutic diet which removed only fish and shellfish from his meals. While Sweeting may disagree with his approach, "mere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief." *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

Moreover, subsequent to his initial evaluation, Dr. Miller claims that "he did not observe, nor was [he] made aware of, any allergic reaction . . . to any of the food he was served while housed at Wallens Ridge." Def.'s Mem., Dr. Miller Aff. ¶ 9. Sweeting claims this is untrue, citing to the many grievances in which he complained of experiencing anaphylaxis. Pl.'s Mem., Sweeting Aff. ¶ 22. He also points to Dr. Miller's notes in his medical record where, on September 19, 2012, Dr. Miller recorded that Sweeting "complain[ed of] food allergies[,] saying his throat swells up and . . . that [his allergies] cause his eye to strain, blood pressure [to go] up, and skin itch." Pl.'s Mem., Ex. 5. However, the foregoing only shows that Dr. Miller knew of Sweeting's subjective complaints of experiencing anaphylaxis. It does not, as Sweeting claims, show that Dr. Miller actually knew of instances where Sweeting experienced such reactions.

The only objective evidence of Sweeting's alleged anaphylaxis consists of an offender request form, filled out in May 2013, in which a nurse from Sussex reported that Sweeting's tongue began to swell after eating beans. However, this report was made after Sweeting's time under Dr. Miller's supervision at WRSP, and does not support a reasonable inference that Dr. Miller was aware of similar episodes at WRSP. In light of the foregoing, as well as the medical attention he received, Sweeting's evidence is insufficient to show that Dr. Miller's treatment decision was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Brown*, 896 F.2d 848, 851 (4th Cir. 1990),

7

*overruled in part on other grounds by Farmer*, 511 U.S. at 837.  Accordingly, Sweeting cannot demonstrate that Dr. Miller acted with deliberate indifference to his food allergies.

## IV. Conclusion

Given the foregoing, there is no genuine dispute as to any material fact regarding Sweeting's deliberate indifference claim, and Defendant Dr. Miller is entitled to judgment as a matter of law.  An appropriate order accompanies this memorandum opinion.

ENTER:  This  12th  day of August, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE